*Rutland,*
January,
1826.

Kendrick and wife
*vs.*
Harris, Ex'r of Donahue.

———

GEORGE LYMAN and CATHARINE his wife, Orators, *vs.* JOHN VANDERSPIEGEL, ISAAC TICHENOR and MOSES ROBINSON, *Executors of Elijah Dewey*, and DANIEL CHURCH and HEMAN SWIFT, *Executors of Moses D. Robinson*, defendants.—*IN CHANCERY.*

*Bennington,*
February,
1826.

A. bequeathes a sum of money to B. to be paid by C. in twelve months, charging a devise to C. with the payment, and dies. Before the 12 months are expired, and before payment, B. dies also, leaving D. his sole legatee. This is a vested legacy in B. and the right passes by his will to D.

ELIJAH DEWEY, the testator, on the 25th June, A. D. 1816, having devised to his grandson *Elijah Dewey Hubbel*, and to *Daniel Mc Eowen*, the husband of the testator's grand-daughter *Betsey*, and to *John Vanderspiegel*, the husband of his grand-daughter *Laura*, a large real estate, consisting of several tracts of land, with the buildings thereon, together with the farming utensils, all the sleds, carts and ploughs, and the harness, &c. belonging to the same, all the live stock of every kind, not before given, and the furniture in their possession, that belonged to the testator at the time of his decease, proceeds to devise further, in the following words :

"Always provided, and it is my will, as it respects the devise and bequest to John Vanderspiegel, the husband of my granddaughter Laura, that he shall pay the sum of one thousand dollars, that is to say, two hundred dollars to each of my grandchildren, hereafter named, in twelve months after my decease, and the said devise and bequest to him, shall be holden for the due payment of the same."

In a subsequent clause in the will, he adverts to this devise again, in the following words : "These children (meaning certain children of his two deceased daughters) being equally the

*Bennington,*
*February,*
*1826.*

Lyman and
wife
*vs.*
Vanderspie-
gel. *et al.*

objects of my care and affection, I do therefore give, devise and bequeath the same (meaning the residue of his estate) to them, *together with the sum of one thousand dollars, to be paid by John Vanderspiegel,* as follows : that is to say, to my grand-daughters Sally Robinson, the wife of Stephen Robinson, and Maria Robinson, the wife of Isaac T. Robinson, children of my deceased daughter Sally Hubbell, and to *Moses D. Robinson,* Eunice Wright, wife of Charles Wright, and Ruth Robinson, children of my deceased daughter Ruth Robinson, to have and to hold the same, in equal shares and portions."

Dewey, the testator, died on the 15th day of October, 1818 ; and on the 25th day of June, 1819, Moses D. Robinson, one of the devisees, died also, leaving the oratrix, *Catharine,* his widow and sole devisee; the said devise of Dewey to Moses D. Robinson being still unpaid.

The prayer of the bill, predicated upon these facts, was, that the said John Vanderspiegel, or the said executors of Dewey, or the said executors of Robinson, be decreed to pay to the orators the said legacy of $200, so bequeathed by the said Dewey to the said Robinson, and by him to the said Catharine.

The defendants demurred, generally, to the orators' bill.

*Church,* in support of the demurrer.    The orators are not entitled, in equity, to recover the legacy of $200 devised by Elijah Dewey, the testator, to be paid by John Vanderspiegel to Moses D. Robinson, in 12 months after the testator's decease, the said Moses D. Robinson having deceased within 12 months thereafter.

*First.* The legacy being charged upon a mixed fund, the real and personal estate devised, (the real being the principal) sinks into the estate for the benefit of the heir, and cannot be raised for the representative or devisee of said Moses D. Robinson.

A legacy given out of a mixed fund, payable at a future time, and the legatee dying before the time of payment, the legacy sinks in the inheritance, for the benefit of the heir, as in the case of real estate alone.—1 *Atk.* 512, *Van* vs. *Clark.*

And there is no difference, whether the charge be created by deed or by will, nor whether provided as a portion for a child, or as a legacy by a collateral relation.——1 *Atk.* 485--6, *Prowse* vs. *Abington*——2 *Vern.* 416, *Yates* vs. *Phettiplace.*

Or if real estate be charged as an auxiliary fund, the legacy will lapse for the benefit of the heir.—*Toller* 172—1 *Swift's Dig.* 454.

See also *P. Williams,* 20, *Cruise* et al. vs. *Barley & Banson.* In this case, the testator bequeathed a legacy of £200 to his eldest son, at the age of 21, out of a fund to be produced by the sale of his real and personal estate : the son died before he attained the age of 21, and it was decreed, that the *legacy was not vested,* and should go to the heir.

The legacy shall sink, as well for the benefit of an *hœres factus* as of an *hœres natus,* for the former is substituted by the testator in place of the latter.——*Jennings* vs. *Looks,* 2 *P. Wms.* 276.

In this case, there is no direction by the testator, to apply any
part of the personal estate to the payment of the legacy, nor was the personal estate specifically charged.

*Second.* If a legacy be charged upon lands, or a term for years, and made payable at a future time, and the legatee die before the time of payment, the legacy will not go to the representative of the legatee, but will sink into the land, for the benefit of the heir. And so, whether the land be the primary or auxiliary fund.----*Toller*, 173.

And it will sink for the benefit of the *hæres factus* or *natus*, and whether charged as a portion or legacy, or by will or by deed.----2 *P. Wms.* 610--11, *Duke of Chandos* vs. *Talbot*---3 *P. Wms.* 138, *Gordon* vs. *Raynes*, (context.)

In *Carter* vs. *Bletsoe*, 2 *Vern.* 617, the testator devised his real estate to his eldest son, and wills that he should pay out of it £600 to three younger children, equally, at their respective ages of 21, and one (Mary) died under 21. It was held, her legacy was not vested, and could not be raised, although an annual maintenance was given them, until 21 years of age.

And there is no difference between a charge on real estate only, and a charge on the real and personal estate too ; for in *Prowse* vs. *Abington*, 1 *Atk.* 484--5, the chancellor held the legacy should sink in the land, and he found the resolutions so strong, he could not decide differently.

And this rule, with few exceptions, is established by the whole current of authorities, on the subject.----2 *Vern.* 416, *Yates* vs. *Phettiplace*, (before cited)---1 *Vern.* 321, *Pawlet* vs. *Pawlet*----2 *Vern.* 92, *Smith* vs. *Smith.*

In 1 *Atk.* 502, *Hall* vs. *Terry*, the devisor gave by his will, an estate to C. D. so as he should pay to his sister Elizabeth, £100 within six months after the contingency appointed by the testator. The sister died before the happening of the contingency, and the legacy failed.

*Third.* If any portion of the legacy devised to Moses D. Robinson, was charged by the testator on the personal property devised to John Vanderspiegel, it is lapsed, as to such part.

For where the gift is originally annexed to the payment, so that both the legacy and the time are clearly future, it is lapsed. ---2 *Swin.* 591, (note.)---*Roper* 175--6--7.

So a devise to the children of J. S. at the end of ten years after the decease of the testator, and the children die within the ten years, it is a lapsed legacy, and is so in all cases where the time is annexed to the legacy itself, and not to the payment of it.---3 *Bac. Abr.* 479, (5th *Ed.*)----2 *Sal.* 415, *Smell* vs. *Dee.*---3 *Atk.* 114, *Att. Genl.* vs. *Milner*----also 1 *Atk.* 504, *Hall* vs. *Terry*, (before referred to) where the lord chancellor observed, the whole gift is in the direction of the payment.

It is admitted, however, that to the rules on which the cases referred to have been decided, there are some exceptions; but it is believed, that the present case does not come within the principles or reasons of the excepted cases.

1. In case a legacy be charged on personal estate, and interest be given to the legatee before it becomes payable, the legacy shall be raised.

2. A legacy given over after the death of the first legatee, for in such case the legatee in remainder shall have it immediately. See *Toller* 304---*Fonb.* 367, (note.)

3. Where the payment of the legacy or portion is postponed from the circumstances, not of the person, but of the fund.

*Bennett,* contra. The question in the present case, is this: is the legacy given to M. D. Robinson *lapsed* or *merged,* by his death before the expiration of 12 months, or in other words, was it a vested legacy?

*First.* It is admitted to be a general rule in England, though regarded as a rigid one, that a legacy charged on a *real fund alone,* and payable at a future day, shall merge in the land, *in favour of the* heir, if the legatee die before the day of payment.

If the present question depended on this rule, it might be well inquired whether our Courts would adopt it as applicable to the genius of our government, and the tenures of our landed estates.

The heir is said to be "the favorite of the law," and out of regard to him the rule was first established.

The rule, it is apprehended, had its origin in the *feudal system.*

Feuds at first, were arbitrary, and at the will of the lord; then certain for one year, afterwards for life, and eventually hereditary, provided the heir was capable of bearing arms, it being thought hard to reject the heir in such case.

It descended to the male heirs generally, at first, and afterwards to the *eldest.*

The feudatory could not *alien, exchange, mortgage,* or *devise* it, without the consent of the lord.

The reason of conferring it, being the personal abilities of the feudatory to serve in war, it was thought not fit that he should transfer the gift from himself, and his posterity, who were presumed to *inherit* his valour, to a stranger, who might be less able to serve the Lord, or might be his enemy.

Hence it is the very spirit of the feud to narrow as much as possible, the operation of all conveyances calculated to disinherit the heir.

The feudal system, with its tenures, has not been adopted by us, and of course the decisions of foreign courts growing out of this system can have no operation here.

The heir, with us, is no more the favourite of the law than the legatee.

But if he were, this would not operate much to the advantage of the defendants, as the *heir* is the *legatee,* and the devisee charged with the payment, a stranger.

Is there a case in the English books where the heir is legatee, and a stranger the devisee, in which it has been held that the legacy is merged in the land by the death of the *legatee* and *heir,*

Bennington,
February,
1826.

Lyman and
wife
vs.
Vanderspie-
gel et al.

before the day of payment ?----4 *Bacon*, 407, *Hodgson* vs. *Rawson*. In such case, is the *hæres factus* to be preferred to the *hæres natus ?*

*Second.* In England, where the legacy is charged upon a real fund, and the day of payment is postponed, from the circumstances, not of the person of the legatee, but for the convenience of the fund, it does not lapse, by the death of the legatee before the day of payment. It is a vested legacy.----3 *P. Wms.* 414, 173--- 2 *P. Wms.* 612, *n.*--2 *Madd. ch.* 27---2 *Vern.* 424, 508---2 *Atk.* 128---3 *Atk.* 321.

In the case before the Court, there is in fact no postponement of the day of payment in the will. If the will had been silent on the subject, the law would have given 12 months. Hence, the words in the will, "shall pay in 12 months," are surplusage, and do not affect the rights of the parties.----4 *Bacon.* 434----*Swift's Dig.* 454----4 *Bacon.* 407----3 *P. Wms.* 173, *Wilson* vs. *Spencer*----2 *Vern.* 424, *Jackson* vs. *Farrant*----*ib.* 72, 92----3 *P. Wms.* 119----2 *P. Wms.* 671.

But if postponed, it was for the convenience of the estate, and the benefit of Vanderspiegel.----See 2 *Vern.* 424.

If interest is to be paid on a legacy, it is vested, though postponed.

*Third.* If a legacy is given, and charged upon a *personal* fund, and the time is annexed to the payment, and not to the legacy itself, it is vested immediately; if annexed to the legacy, it is contingent; this is settled law. In the present case, the time is annexed to the payment.----4 *Bacon*, 393---*Swinb.* 311, 13.

In *this state*, ought not the rule to be the same, whether the legacy is charged on a *personal* or real fund ? Are the decisions in the English Courts, relative to the latter class of cases, applicable to property with us ?

1. The *heir* is not a special favourite with us, as there.

2. And if he were, it could make no difference what fund is charged. *Both* are assets for the payment of debts.

The same persons take the personal estate under the statute of distributions, and the real estate by descent; not so in England.

*Fourth.* In the case at bar, the *personal* and *real* funds are charged with the legacy.

In such cases, it has been decided in England, that the legacy does not sink as to the personal fund, by the death of the legatee, before the time of payment, but is vested, and goes to the executor, though the decisions are somewhat contradictory.---- 2 *Madd. ch.* 26----3 *Atk.* 69, 203, 330, 320----1 *Wils.* 131----2 *P. Wms.* 276, 612.

*Fifth.* The *intention* of the testator is the *polar star*, in construing wills. Can there be a doubt in the present case, as to the testator's intention ? Was it not, that the $1000 should go to the grand-children and their representatives ?

*Bennington,*
*February,*
*1826.*

Lyman and
wife
*vs.*
Vanderspie-
gol *et al.*

The opinion of the Court was pronounced by

HUTCHINSON, *chancellor*. This cause has been heard, on a demurrer to the bill of complaint, and the principal point litigated, is, whether the legacy of two hundred dollars to Moses D. Robinson, under the will of Elijah Dewey, lapsed by the decease of said Moses D. Robinson, after the decease of Dewey, and before the legacy was payable? This is properly treated by both parties, as the essential point; for, if it thus lapsed, the orators have no claim, by reason of any thing alleged in the bill. If otherwise, if it became vested in Moses D. Robinson in his lifetime, though payable after his decease, the orators, in the right of said Catharine, have right to the same, under the will of said Moses D. Robinson.

This point has been presented, with perfect fairness, and no small degree of ingenuity, on both sides; and no industry has been wanting, to find authorities that seem to be in point, on either side. These authorities well support the position, that a legacy, given absolutely to be paid at a future day, vests, if the legatee survive the testator, though he die before the time of payment; but when it is given as a charge upon real estate only, and the legatee die before day of payment, the legacy lapses, unless it appear by the will, that payment of the legacy was postponed, as a convenience to the fund, and not to the person, in which case it does not lapse. But where a legacy is charged upon a mixed fund, as in the present case, the decisions are less uniform. Hence the parties urge the nice distinction, whether the time, in the case before us, is attached to the legacy, or only to the time of payment? This legacy appears to be created and modified in two parts of the will of Elijah Dewey. The phraseology, where it first occurs, taken alone, would seem to favour the construction put by the demurrant. But, taking the whole together, as it must be taken for every purpose of construction, it appears otherwise.

There is an absolute devise to Vanderspiegel of a large real and personal estate; then follows a proviso that he pay the legacy now sought, within twelve months after the decease of the testator, and makes the payment of this the condition of his holding his own legacy. It is obvious that the time here given for payment is the same the law would have given the executor.

Further, the true reading of the will of Elijah Dewey, as far as relates to this subject, and this only, is this. "I do hereby devise and bequeath, one thousand dollars to my grand-daughters Sally Robinson, the wife of Stephen Robinson, and Maria Robinson, the wife of Isaac T. Robinson, children of my deceased daughter Sally Hubbell, and to Moses D. Robinson, Eunice Wright, wife of Charles Wright, and Ruth Robinson, children of my deceased daughter Ruth Robinson, to have and to hold the same in equal shares and portions, to be paid by John Vanderspiegel; and my will is, that he pay the same to them; that is to say, two hundred dollars to each of them, in twelve months after my decease, and that the said devise and bequest to him

*Bennington,*
*February,*
*1826.*

*Lyman and*
*wife*
*vs.*
*Vanderspie-*
*gel et al.*

the said Vanderspiegel shall be holden for the due payment of the same." Upon this reading of the will of Dewey, the legacy to Moses D. Robinson vested immediately upon the decease of Dewey ; that is, his right to the money, became vested upon the decease of Dewey, though the time of payment would not then have come.

Again, the facts in the bill support this position, to wit : the legacy to Vanderspiegel vested upon the death of Dewey. That legacy, to the amount of two hundred dollars, was in trust for Moses D. Robinson, but it was not payable under twelve months from the decease of Dewey, and M. D. Robinson died before the twelve months expired. His executor could claim the money in equity after the twelve months expired, and the oratrix, Catharine, takes the equitable interest, under the will of M. D. Robinson, and now claims the execution of the trust. This view would support the bill.

Upon the above reading of the will, the case in 3d of *P. Wms.* 173, *Wilson* vs. *Spencer,* is strong in point, to show the legacy vested in M. D. Robinson, before his decease.

So far as the nature of the fund can affect this case, it may be observed, that this does not fully come within the reason of the ordinary cases in which so great importance is attached to that circumstance. In those ordinary cases, the executors or trustees are to pay out of a fund in which they have no interest, in any event whatever. In the present case, the trustee, if we call him such, Vanderspiegel, holds the entire fund, upon paying the five legacies of $200 each. If the legacy to M. D. Robinson should be considered as lapsed, whether it would lapse for the benefit of the heirs at law of Dewey, or sink into the fund and vest in Vanderspiegel, is not now important to decide ; but probably it would sink into the fund.

To what is already said, with regard to the nature of the fund, may be added, that our statute for settling estates seems to have abolished all distinction between real and personal estate, except that the personal estate must first be used. The executor has alike control over both for the payment of debts, and the heirs have no claim for any thing but what remains after payment of debts, and costs of settling the estate. In England, the executor has no control over the real estate, and if debts remain, after the personal estate is swallowed, the creditors must call upon the heir, who receives the real estate by inheritance or devise. This entire change by our statute, renders inapplicable those decisions in England, dictated by laws so diverse from ours.

The demurrer in this case is overruled, and the cause must stand over for an answer.

*Milo L. Bennett* and *Chauncey Langdon,* for the orators.

*Daniel Church, Geo. R. Davis,* and *D. Robinson, jr.* for the defendants.